## Kimelewski, Appellant, v. Commonwealth.

*Sale—Delivery of possession—Fraud.*

1. Delivery of possession is indispensable to transfer a title to chattels by the act of the owner that shall be valid against creditors.

2. A licensed saloonkeeper occupied with his family the portion of the licensed premises not used for saloon purposes. He sold to a man who was about to marry his daughter, the household goods, the bar and bar fixtures and appliances. After the marriage the son-in-law went to live with his wife's father, but continued in another business in which he was engaged before he was married. The father continued to conduct the saloon with his name on the window with no change in the lease or in the conduct of the saloon, or of the household affairs for two or three months. An execution was issued on a judgment against the father, and the chattels in the licensed premises were levied upon. Subsequently the license was transferred to the son-in-law, and he took charge of the saloon. *Held*, that there was no such delivery of possession, as would make the alleged sale valid as against the creditors of the vendor.

*Appeals—Record—Presumption of regularity.*

3. Where error does not appear upon the record or it cannot be determined from the record whether error existed or not the appellate court will not reverse but will presume that everything was regular in the court below.

Argued March 2, 1909. Appeal, No. 7, Jan. T., 1909, by plaintiff, from judgment of C. P. Luzerne Co., Feb. T., 1907, No. 498, on verdict for defendant in case of Kimelewski v. Commonwealth, at the instance of Wilkes-Barre Law & Library Association. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Feigned issue on sheriff's interpleader. Before LYNCH, P. J. The facts appear by the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were in giving binding instructions for the defendant.

*M. J. Mulhall*, for appellant.—Where the vendor and vendee are members of the same family, and the property consists of chattels used in, or in connection with, their common home, the vendee is not bound to turn the vendor out of doors in order to separate him from his property; a constructive delivery is sufficient: Huffman v. McIlvaine, 13 Pa. Superior Ct. 108; Kendig v. Binkley, 10 Pa. Superior Ct. 463; Evans v. Scott, 89 Pa. 136; Crawford v. Davis, 99 Pa. 576; Ziegler v. Handrick, 106 Pa. 87; McClure v. Forney, 107 Pa. 414; Rennington v. Spatz, 128 Pa. 524; Goddard, Hill & Co. v. Weil & Co., 165 Pa. 419; McCullough v. Willey, 200 Pa. 168.

*G. J. Clark*, for appellee, cited: Kendig v. Binkley, 10 Pa. Superior Ct. 463; Bartlick v. Josenhans, 29 Pa. Superior Ct. 227; Barlow v. Fox, 203 Pa. 114; White v. Gunn, 205 Pa. 229.

OPINION BY RICE, P. J., April 19, 1909:

John Snesker for ten years conducted a restaurant in the building owned by John Becker. In 1906 the license was issued to Becker, but Snesker remained in possession as tenant and conducted the business, so it is claimed, as Becker's manager. He and his family, consisting of his wife and daughter, occupied such part of the building as was not used for saloon purposes as a residence. It is alleged that on August 25, 1906, Snesker sold to the plaintiff, who was about to marry his daughter, all of the household goods, the bar and bar fixtures and appliances and barroom furniture for the sum of $100. At this time the plaintiff was in the insurance business and lived on another street. In the following month he married Snesker's daughter, and on September 8 or 9, upon returning from their wedding trip, they took up their residence with Snesker, bringing with them some furniture they had bought in New York. The plaintiff continued in his former employment and Snesker continued to conduct the saloon. The latter had a house servant whom he retained, and so far as appears no change was made

in the conduct of the household affairs except that the plaintiff ordered provisions in the name of Snesker which his, the plaintiff's, wife paid for. Snesker's name appeared on the window of the saloon, but no change was made in the lease or in the conduct of the saloon or of the household affairs, except as above stated, until October 29, 1906, when the license was transferred to the plaintiff and he took charge of the saloon. In the meantime action had been brought and judgment obtained against Snesker upon a forfeited recognizance, which he had entered into prior to the alleged sale, and execution had been issued and levy made (about October 15, 1906) upon the property in dispute.

There has been no deviation from the general rule that delivery of possession is indispensable to transfer a title to chattels by the act of the owner that shall be valid against creditors: Barlow v. Fox, 203 Pa. 114. It is nevertheless true that in the later cases the rigor of the rule laid down in the earlier cases as to what will be a sufficient delivery, and as to what evidence will be sufficient to carry that question to the jury, has been relaxed. In one of the latest cases on the subject the rule was thus stated by Mr. Justice BROWN: "When a purchase is made in good faith, the fair and honest purpose of the vendor and vendee will not be defeated, if the conduct of the parties shows that there was an intention to transfer the possession as well as the title and the vendee assumes such control of the property as ought reasonably to indicate a change of ownership:" White v. Gunn, 205 Pa. 229. Applying this principle to the evidence adduced by the plaintiff relative to the goods which he claimed to have bought from John Snesker, we are of opinion that a finding by the jury that there was such assumption of control of the property by the vendee as ought reasonably to indicate a change of ownership would be wholly unsupported. This being so, it was the province of the court to declare as matter of law that there was no such delivery of possession as would make the alleged sale valid as against the creditors of the vendor: Hastings v. Sproul, 10 Pa. Superior Ct. 82.

Of course, if it appeared that the furniture bought by the plaintiff in New York was included in the levy and in the issue

being tried, binding instructions in favor of the defendant as to such goods would not have been warranted. But owing to the loss of the files from the office of the prothonotary of the common pleas, the appellant was unable to bring up with the record and print in his paper-book the sheriff's petition or the appraisement or the pleadings. Nor is the evidence they would furnish as to the property levied upon and in controversy in this suit supplied otherwise. It is therefore impossible for us to ascertain whether any of the furniture of plaintiff bought in New York was levied upon. Under the circumstances, we are compelled to presume that the court in entering judgment for $10.00 less than the amount of the verdict, that being the appraised value of the sideboard the plaintiff testified he bought in New York, entered judgment for the appraised value of such property only as the plaintiff alleged he bought of Snesker. It is an elementary principle that where error does not appear upon the record or it cannot be determined from the record whether error existed or not the appellate court will not reverse but will presume that everything was regular in the court below.

The judgment is affirmed.